IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHAUN AITES,

      Plaintiff,

v.                                                                      Civil Action 2:18-cv-431
                                                                   Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

**OPINION AND ORDER**

Plaintiff, Shaun Aites, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI. For the reasons that follow, Plaintiff's Statement of Errors (Doc. 16) is **GRANTED**. The case is remanded in accordance with this Opinion.

**I. BACKGROUND**

    **A. Prior Proceedings**

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income on March 13, 2015 under Titles II and XVI, alleging disability beginning on November 10, 2014. (Doc. 11-5, Tr. 110–11, 224–33, PAGEID #: 153–54, 269–79). His application was denied initially (Doc. 11-4, Tr. 144–50, PAGEID #: 188–94), and again on reconsideration (*Id*., Tr. 158–69, PAGEID #: 202–13). After a hearing, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. (Doc. 11-2, Tr. 22–37, PAGEID #: 64–79). The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of judicial review. (*Id*., Tr. 3–5, PAGEID #: 45–47).

Plaintiff filed this action on May 3, 2018 (Doc. 1), and the Commissioner filed the administrative record on July 9, 2018 (Doc. 11). Plaintiff filed a Statement of Specific Errors (Doc. 16), the Commissioner responded (Doc. 17), and no reply was filed.

**B. Relevant Testimony at the Administrative Hearing**

Plaintiff testified that he lives in a home with his girlfriend and two daughters. (Doc. 11-2, Tr. 42, PAGEID #: 84). Plaintiff stated he gained full custody of his daughters about four years ago when his ex-wife left them and, until a couple months prior when his girlfriend moved in, he lived alone with his two daughters. (*Id*., Tr. 43, PAGEID #: 85). He explained that his only income is his older daughter's SSI, which she receives due to learning disabilities and complications. (*Id*., Tr. 46, PAGEID #: 88). He also discussed receiving food stamps and insurance though the welfare office. (*Id*.).

Plaintiff testified that he is 5'9" and 140 pounds, down from a normal weight of 215 pounds. (*Id*., Tr. 44, PAGEID #: 885). He explained the weight loss was due to stomach surgeries that affected his ability to eat and digest food regularly and required an alteration of his diet. (*Id*.).

Plaintiff stated he graduated high school taking a special education curriculum. (*Id*., Tr. 44, PAGEID #: 86). He explained he can read to a certain extent but understands better if something is read to him, that he is "pretty good at math," and that his mother aided him in completing most of the paperwork required for the administrative proceedings. (*Id*.). Plaintiff has a driver's license that is currently under suspension due to an unpaid fine. (*Id*., Tr. 45, PAGEID #: 87).

Plaintiff explained his work history going back to 2002. (*Id*., Tr. 47, PAGEID #: 89). He most recently worked for UPS as truck unloader lifting up to eighty pounds and had worked for

2

UPS on three different occasions. (*Id.*). He also discussed working as a general laborer at warehouses, a machine operator, a construction worker, and a groundskeeper. (*Id.*, Tr. 48–53, PAGEID #: 90–95).

Plaintiff stated the most severe condition preventing him from work is his back pain. (*Id.*, Tr. 54, PAGEID #: 96). He said the pain is a result of an injury while unloading trucks for UPS. (*Id.*, Tr. 55, PAGEID #: 97). He stated that his back irritates him when he moves the wrong way, that he loses feeling in his left leg, and falls over or needs to be carried on occasion. (*Id.*). Plaintiff testified that he experiences a sharp, stabbing pain when he turns or twists a certain way. (*Id.*). He further testified that on an average day his pain is a six or seven out of ten. (*Id.*, Tr. 54–55, PAGEID #: 96–97). On bad days—two or three times a month—Plaintiff explained that it is hard to get out of bed, he is unable to move, and needs someone to bring him food and drinks. (*Id.*, Tr. 56–57, PAGEID #: 98–99).

Plaintiff's attorney then asked about what activities trigger his back pain. (*Id.*, Tr. 57, PAGEID #: 99). Plaintiff testified the pain is triggered by bending at the waist, twisting, and sitting for more than an hour. (*Id.*).

Plaintiff explained that he lost insurance covering visits to a back doctor, resulting in him not seeing one for four years and not taking medication for the pain. (*Id.*, Tr. 56, PAGEID #: 98). He stated the only medication he received for the last four years was steroids and inflammation pills on occasion from an emergency room. (*Id.*). Plaintiff said that before he lost coverage, he would see a doctor and receive cortisone injections into his spine once a month and into the hip every other month. (*Id.*, Tr. 58, PAGEID #: 100). More recently, Plaintiff stated that Dr. Tina Lee

sent him to a sports doctor to treat the causes of his back pain. (*Id*., Tr. 59, PAGEID #: 101). He also uses a back brace and a TENS Unit. (*Id.*).

The testimony then turned to Plaintiff's heart condition. (*Id*., Tr. 60, PAGEID #: 102). Plaintiff testified that he had heart attack symptoms that caused permanent damage to his heart. (*Id.*). Specifically, Plaintiff stated he had an angina caused by stress and smoking. (*Id.*). Plaintiff explained he smoked around two packs of cigarettes per day at the time of the incident, and was down to half a pack per day at the time of the hearing. (*Id*., Tr. 61, PAGEID #: 103). Plaintiff had a heart attack in 2014. (*Id.*). Following the heart attack, he experienced chest pains "every so often" but nothing serious enough that he felt the need for medication. (*Id.*). He explained that his doctor did not put him on a medication regimen but gave him nitroglycerine as-needed. (*Id*., Tr. 61–62, PAGEID #: 103–04).

Next, Plaintiff testified about his stomach problems. (*Id*., Tr. 62, PAGEID #: 104). In 2015, he had two stomach surgeries. (*Id.*). Following the surgeries, he had ongoing symptoms: he has not had a solid bowel movement since 2015, he has diarrhea at least once every hour, and there have been instances where he has defecated on accident due to an inability to control his bowels. (*Id*., Tr. 63–64, PAGEID #: 105–06). He then explained that he would have to have surgery done every five to ten years for scar tissue removal. (*Id*., Tr. 67, PAGEID #: 109). He said he had been given medications like stool softener and stool thickeners, but they have not helped him very much. (*Id*., Tr. 59, PAGEID #: 101).

Finally, Plaintiff testified about his mental health. (*Id.*). He stated that his physical health problems contributes to mental health problems. (*Id*., Tr. 68, PAGEID #: 110). He said he receives anti-depressants from his family doctor and that he had tried to seek psychiatric counseling but has

4

not received it. (*Id.*). He explained that he does not experience any symptoms besides depression and that the medication helps alleviate his symptoms. (*Id.*). He testified that he once spent six months in a mental institution as a minor for attacking his mother but had no psychiatric admissions or problems with aggression after October 2014. (*Id.*, Tr. 68–69, PAGEID #: 110-11).

The Vocational Expert ("VE") opined that Plaintiff was not capable of performing his past work as a material handler, construction worker, or groundskeeper because these jobs require exertion over Plaintiff's abilities. (*Id.*, Tr. 70–72, PAGEID #: 112–114). The VE concluded Plaintiff could perform work as a routing clerk, a stock checker for apparel, or a cleaner or housekeeper. (*Id.*, Tr. 73, PAGEID #: 115). The ALJ then added the following limitations: the individual "would need a sit/stand option of every hour for two to three minutes, occasional pushing/pulling with the lower left extremity, occasional reaching, fingering and handling . . . and would need additional bathroom breaks, and would be off task due to pain ten percent of the day." (*Id.*, Tr. 73–74, PAGEID #: 115–16). With these limitations, the VE stated that in her professional experience, the off-task time would be above the tolerance for an unskilled worker so there would be no jobs in the national economy. (*Id.*, Tr. 74, PAGEID #: 116). The VE also opined that, adding to the ALJ's hypothetical, if the worker could not bend at the waist there would not be any available jobs. (*Id.*, Tr. 74–75, PAGEID #: 116–17).

### C. Relevant Medical Background

Plaintiff's argument concerns the weight that the ALJ gave to Dr. Tina Lee's and Dr. Ken Rowland's opinions. (*See generally* Doc. 16). Specifically, Plaintiff identifies Dr. Lee's opinions about his postural activities (*Id.* at 12); and Dr. Rowland's opinion about his mental limitations

(*Id.* at 17). The Court finds only Dr. Lee's opinion needs be addressed at this time. The scope of the summary of Plaintiff's medical background is limited accordingly.

Plaintiff visited Preferred Center for Integrative Medicine ("PCIM") on January 31, 2014. (Doc. 11-8, Tr. 723, PAGEID #: 771). Dr. Gordon Korby noted that Plaintiff sought treatment for lower back pain that reached to his gluteal region. (*Id.*). Dr. Korby described a history of lower back pain: It stemmed from bending over, he complained of it for approximately four years, he received physical therapy for over seven months without relief, and upon referral the doctor diagnosed him with sacroiliac joint dysfunction/sacroiliitis with discogenic involvement. (*Id.*, Tr. 724, PAGEID #: 772). Dr. Korby treated Plaintiff with low-dose, short-term medication while addressing the physical causes. (*Id.*). Plaintiff "responded quite well to care and was able to continue to function and work." (*Id.*). His pain had a recurrence after nine months and was daily, encompassing most of the day. (*Id.*, Tr. 724–25, PAGEID #: 772–73). Plaintiff told Dr. Korby the pain was a dull, deep throbbing ache with episodes of sharp pain, aggravated by sitting, forward bending and lifting. (*Id.*). Dr. Korby recommended interventional injections and painkillers. (*Id.*, Tr. 725–26, PAGEID #: 773–74).

Plaintiff had numerous subsequent visits to PCIM:

- February 25, 2014: Received an injection in his lower back, stated that he aggravated his lower back by shoveling and was experiencing 6/10 on the pain scale after the incident. (*Id.*, Tr. 721, PAGEID #: 768–69).

- March 26, 2014: Experiencing a 4/10 on the pain scale. (*Id.*, Tr. 717, PAGEID #: 765).

- April 23, 2014: Received injunctions and complained of having a hard time sleeping on his left side, sitting, standing, twisting, bending, lifting more than twenty pounds, and walking more than twenty minutes. (*Id.*, Tr. 713–15, PAGEID #: 761–63).

- June 20, 2014: Complained of injuring himself while doing gardening and yard work and twisted his hip area; reported weakness and numbness from prolonged standing, and

6

- claimed sitting, getting from a sit to stand, going up and down stairs, lifting more than 25 pounds, or walking more than 25 minutes were mildly to moderately difficult. (*Id.*, Tr. 706–07, PAGEID #: 754–55).

- July 17, 2014: Reported mild difficulty sitting, standing, twisting, bending, lifting no more than twenty-five pounds, and walking no more than fifteen minutes. (*Id.*, Tr. 702, PAGEID #: 750). Dr. Korby's reports on Plaintiff's function for the next two months read similarly to the July 17 report, with the Plaintiff's reported pain at a 5-6/10. (*Id.*, Tr. 691–700, PAGEID #: 739–48).

- August 2014: Came in for an emergency visit after lifting boxes and aggravating his lumbar disk protrusion, causing right leg pain weakness and numbness and back pain; he reported that he "continues to work at his new job at UPS due to financial reasons, although he is looking for a new job that is easier on his back." (*Id.*, Tr. 687, PAGEID #: 735).

In Plaintiff's remaining PCIM visits in the record, dating to February 6, 2015, Plaintiff reported mild to moderate difficulty during prolonged siting, standing, twisting, bending, lifting, and walking more than fifteen to twenty-five minutes, among other complaints. (*Id.*, Tr. 667–86, PAGEID #: 715–34). Plaintiff reported his pain between a five and seven out of ten, and received injections at most of his visits. (*Id.*).

On December 6, 2013, Plaintiff had an appointment with Dr. Tina Lee after he was seen for chest pain and was told he had a torn rotator cuff in his right shoulder and that he needed a referral to a pain specialist for back pain. (*Id.*, Tr. 796, PAGEID #: 844).

On December 3, 2013, Dr. Tina Lee noted that plaintiff' complained of depression, anxiety, insomnia, shoulder joint pain, chronic low back pain, and backache. (*Id.*, Tr. 816, PAGEID #: 864). On May 28, 2014, Dr. Lee stated that Plaintiff's back pain had been occurring for six months, was moderate, and was worsened by lifting, sitting, and walking. (*Id.*, Tr. 812–13, PAGEID #: 860–61).

Almost nine months later, Dr. Lee conducted a physical exam on Plaintiff reporting tenderness in the lumbar spine with moderately reduced motion, and the same in the right shoulder

7

and left knee. (*Id.*, Tr. 810, PAGEID #: 858). Plaintiff again saw Dr. Lee on April 24, 2015, complaining of left knee pain and left shoulder pain. (*Id.*, Tr. 799–800, PAGEID #: 848–49). Dr. Lee reported "[t]here is no evidence of fracture, dislocation or abnormality of the osseous mineralization pattern or soft tissues. The visualized joint spaces are well preserved." (*Id.*). Plaintiff was said to have a normal knee and normal shoulder. (*Id.*).

On June 6, 2016, Dr. Lee assessed Plaintiff as having chronic low back pain, "radiating down left buttock and thigh, numbness/tingling, weakness in left thigh." (*Id.*, Tr. 825, PAGEID #: 873). On January 1, 2017, Dr. Lee reported tenderness in Plaintiff's joints, bones, and muscles and limited range of motion in his lower back. (*Id.*, Tr. 819, PAGEID #: 867).

Dr. Lee completed a Medical Source Statement indicating Plaintiff's physical capacity on February 2, 2017. (*Id.*, Tr. 840, PAGEID #: 887). Dr. Lee indicated that lifting/carrying exercises, standing, sitting and postural activities are affected by Plaintiff's impairments. (*Id.*). Dr. Lee elaborated that Plaintiff had a limited range of motion in L-S spine, tenderness in L-spine and left paraspinous muscle, and an x-ray showed mild right degenerative changes at L5-S. (*Id.*). Dr. Lee indicated Plaintiff can occasionally reach, push and pull, and that temperature extremes may affect his impairment. (*Id.*, Tr. 841, PAGEID #: 889). Dr. Lee stated a brace and TENS unit had been prescribed and that Plaintiff experienced pain of 8/10 that interferes with concentration, would take Plaintiff off task, and cause absenteeism. (*Id.*). Dr. Lee also stated Plaintiff needed to be able to alternate positions between sitting, standing, and walking at will. (*Id.*). Finally, Dr. Lee said that Plaintiff would require one to two hours of rest time during an eight-hour work day, including time to use the bathroom. (*Id.*)

### D. The ALJ's Decision

The ALJ found that Plaintiff had the following severe impairments: status-post myocardial infarction, gastrointestinal issues, status-post surgeries, small bowel obstructions, sciatic neuropathy, thoracic neuritis, degenerative disc disease with lower left extremity radiculopathy with foot drop, lumbar displacement without myelopathy, depression, borderline intellectual functioning (BIF) and ADHD. (Doc. 11-2, Tr. 24, PAGEID #: 66). The ALJ held, however, that there was no medical opinion of record to indicate the existence of an impairment or combination of impairments that met or equaled in severity the level of the Listings of Impairments. (*Id.*, Tr. 25, PAGEID #: 67).

As to Plaintiff's RFC, the ALJ opined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand/walk for four hours a day, sit for six hours a day. He should avoid pushing and pulling with the lower left extremity. He can occasionally climb ramps and stairs, stop, kneel, crouch and crawl. He should avoid climbing ladders, ropes or scaffolds. He should avoid hazards and moving or heavy machinery. The claimant can perform simple routine tasks with no high strict production quotas and only occasionally changes and low-stress in the work setting. Additionally, the claimant would be off-task 7 percent of the day and require 2-3 additional breaks for 2-3 minutes.

(*Id.*, Tr. 26, PAGEID #: 68). After consideration of the evidence, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*, Tr. 27, PAGEID #: 69). The ALJ agreed with the VE's testimony as to the jobs Plaintiff can perform, which include the following: Routing Clerk, Stock Checker, and Cleaner/Housekeeper. (*Id.*, Tr. 32, PAGEID #: 74).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff asserts two assignments of error: (1) the ALJ erred in the weight assigned to the opinion of treating physician Dr. Lee, and (2) the ALJ erred in giving only partial weight to the opinion of consultative examiner Dr. Kent Rowland. (*See generally* Doc. 16). Because the first assignment of error has merit, the Court does not reach the second.

In his first statement of error, Plaintiff contends that the ALJ incorrectly evaluated Dr. Lee's treating source opinion. (*Id.* at 11–13). Plaintiff makes two arguments: (1) Dr. Lee's opinion

is entitled to controlling weight under the treating physician rule, and (2) the ALJ failed to provide "good reasons" for discrediting Dr. Lee's opinion. (*Id.* at 12–17).

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (alterations in original)); 20 C.F.R. § 404.1527(c)(2). In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation

11

marks omitted). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

The ALJ in this case gave partial weight to the statement of Dr. Lee "as her opinion is somewhat consistent with the medical evidence of record." (Doc. 11-2, Tr. 30, PAGEID #: 72). Great weight was given to Dr. Lee's "opinion that the claimant can occasionally lift 20 pounds and frequently lift 15 pounds" as the ALJ found it consistent with the light residual functional capacity and a reasonable limitation given Plaintiff's heart and back problems. (*Id.*) The ALJ, however, gave little weight to Dr. Lee's opinion that Plaintiff "can rarely engage in postural activities, and required [one to two] hours additional rest time in an average day." (*Id.*). The ALJ stated these opinions were not supported by the medical evidence of record because Plaintiff "is independent in his activities of daily living, takes care of his children, drives, prepares meals and does household chores, which indicates [Plaintiff] has more functionality" than ascribed by Dr. Lee's limitations. (*Id.*). The Court must, therefore, determine whether the ALJ provided "good reasons" for giving Dr. Lee's opinions partial weight.

The Court finds, and the Commissioner concedes (Doc. 17 at 7), that the ALJ failed to apply the "two-step" method of evaluating treating sources as required by law. The Commissioner, nonetheless, argues that remand is not required because the ALJ satisfied an exception to the treating physician rule because "the court can clearly understand the weight granted to a treating source's opinion and the AJG articulated good reasons for granting that weight." (*Id.*, *citing Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 258 (6th Cir. 2016); *Francis*, 414 F. App'x at 805 (6th Cir. 2011) (*citing Wilson*, 378 F.3d at 547.)).

12

The Court does not agree. The only reason the ALJ provided for giving Dr. Lee's opinions partial weight is the following: Plaintiff "is independent in his activities of daily living, takes care of his children, drives, prepares meals and does household chores, which indicates [Plaintiff] has more functionality" than ascribed by Dr. Lee's limitations. (*Id.*, Tr. 30, PAGEID #: 72). But "there is a significant difference between doing minimal self-sustaining household chores and performing work 40 hours a week 52 weeks per year." *Lorman v. Comm'r of Soc. Sec.*, 107 F. Supp. 829, 838 (S.D. Ohio 2015). In *Lorman*, this Court held that the "[p]laintiff's ability to perform some activities on a limited basis is not substantial evidence that her symptoms are not disabling." *Id.* (*citing Rogers*, 486 F.3d at 248–49 (holding the daily functions of driving, cleaning, caring for pets, laundry, exercising, and watching the news are not comparable to typical work activities)); *see also* 20 C.F.R. § 404.1572(c) ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity."). Therefore, the ALJ's decision does not indicate application of the factors set out in § 404.1527 (c), including supportability, consistency, and specialization.

Moreover, to the extent this explanation suggests that Dr. Lee's opinion is not supported by the record, this argument is not persuasive. "[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend*, 375 Fed. App'x. at 552. The ALJ's decision does not provide the Plaintiff and this Court "a clear understanding of the reasons for the weight given to [Dr. Lee's] opinion." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 805 (6th Cir. 2011) (quoting *Friend*,

13

375 F. App'x at 551)). The ALJ did not specify the ways in which Dr. Lee's opinion conflicted with the evidence in the record. *Cf. id*. ("[T]he ALJ outlined the myriad of ways in which the doctor's opinion conflicted with the evidence in the record. The ALJ gave [Plaintiff] procedural safeguard of reasons—meeting the goal of the regulation—and the only true disagreement lies within the merits of the reasons themselves."). The ALJ did not address the in-depth findings of Dr. Lee's examinations and did not explain how Dr. Lee's findings were inconsistent with the clinical data. *Cf. Brock v. Comm'r of Soc. Sec.*, 368 Fed. App'x 622, 625 (6th Cir. 2010) (upholding the ALJ's findings that challenged the supportability and consistency of a treating physician's diagnoses where the ALJ addressed the in-depth findings of the treating physician's findings).

Accordingly, the Court finds the ALJ's decision regarding Dr. Lee's opinion contains procedural errors that are not harmless. The ALJ failed to provide "good reasons" for discounting Dr. Lee's opinions. *See* 20 C.F.R. § 404.1527(c)(2). Having concluded that Plaintiff's first assignment of error warrants reversal, the Undersigned declines the address the remaining assignment of error.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Statement of Errors (Doc. 16) is **GRANTED** and the case is **REMANDED** to the ALJ for further proceedings consistent with this Opinion.

IT IS SO ORDERED.


Date: February 26, 2019 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE